**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Demetrius M. White, | ) | No. CV 11-8152-PCT-RCB (SPL) |
| Plaintiff, | ) | |
| vs. | ) | **O R D E R** |
| Mike Linderman, et al., | ) | |
| Defendants. | ) | |

Plaintiff Demetrius White brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Administrator of Pastoral Activities Mike Linderman and ADC Senior Chaplain Nick Desmond (Doc. 12).[1] Before the Court is Defendants' Motion for Summary Judgment (Doc. 48), which Plaintiff opposes (Doc. 51).[2]

The Court will grant in part and deny in part Defendants' motion.

**I.    Background**

Plaintiff's claim arose during his confinement at the Arizona State Prison Complex

---

[1] Upon screening pursuant to 28 U.S.C. § 1915A(a), the Court dismissed Ryan, Sturm, and unknown ADC officers as Defendants as well as Counts III and IV (Doc. 13).

[2] The Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), which informed Plaintiff of the requirements of Federal Rule of Civil Procedure 56 (Doc. 50).

Kaibab Unit in Winslow, Arizona (Doc. 12 at 1).³ In his First Amended Complaint, Plaintiff identified himself as a Messianic Jew who sought a kosher diet because he believes his religion follows the same dietary guidelines used in Orthodox Judaism. In his remaining claim, Plaintiff alleged that Desmond denied Plaintiff's kosher diet request, stating that Plaintiff was "not a Jew and [he] should not follow in these ways" and informing Plaintiff that he (Desmond) had proof that Messianic Jews did not believe "that way" (id. at 3). Linderman also denied Plaintiff's request, even after Plaintiff provided evidence from the Bible and Torah indicating that Messianic Judaism does not have dietary laws (id. at 4). Plaintiff alleged that as a result of Defendants' actions, his religious exercise was substantially burdened under both the Free Exercise Clause and RLUIPA.

Defendants now move for summary judgment on the grounds that (1) money damages are not available under RLUIPA, (2) there is no individual liability under RLUIPA, (3) they did not burden Plaintiff's religious practice, (4) the policy governing religious-diet requests furthers a compelling governmental interest by the least restrictive means, (5) the policy also survives scrutiny under Turner v. Safely, 482 U.S. 78 (1987), (6) Plaintiff cannot seek declaratory and injunctive relief against Defendants in their individual capacity, (7) the Eleventh Amendment bars a monetary claim against Defendants in their official capacity, and (8) Plaintiff is not entitled to punitive or moratory damages, and (9) Defendants are entitled to qualified immunity (Doc. 48).

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

---

³Plaintiff has since been moved to the Arizona State Prison-Kingman in Kingman, Arizona (Doc. 32).

- 2 -

demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. This initial burden on the movant, however, "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence . . . ." Id. at 325.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, or the movant can point to the pleadings and sufficiently argue that the nonmovant has failed to establish an element essential to his case, see Celotex 477 U.S. at 323, then the burden shifts to the nonmovant, who must come forward with sufficient evidence demonstrating to the Court that there are genuine issues of material fact to be decided at trial. Fed. R. Civ. P. 56(e). The opposing party must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-movant. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. Although the court need consider only the cited materials, it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Background Facts**

Defendants submit Statement of Facts with supporting exhibits, including their declarations (Doc. 49, Defs.' Statement of Facts (DSOF), Exs. A-O). From the parties' factual assertions and the attached evidence, the Court finds the following relevant facts:

The ADC incarcerates approximately 40,000 prisoners in ten prison complexes throughout Arizona (DSOF ¶ 5). In recognition of the positive influence that sincere religious practice can have on inmates' rehabilitation, ADC maintains a pastoral-services

program available to all inmates who designate a religious preference (id. ¶ 6). Inmates are afforded the opportunity to practice their chosen religions through the ADC religious services program, outlined in ADC Department Order 904, *Inmate Religious Activities/Marriage Requests* (id. ¶ 10). This program includes access to paid chaplains, volunteer certified religious leaders, and multi-faith gatherings (id. ¶ 11).

Male inmates normally enter the ADC at the Alhambra Reception center at the ASPC-Phoenix and, after their initial screening, are transferred to one of the ten ADC prison complexes throughout Arizona or to a private or contracted facility. During intake or thereafter, inmates may declare a religious preference to prison authorities, which is recorded in the inmate's file (id. ¶ 12). To obtain religious services, including permission to posses religious property or receive a religious diet, inmates must designate a religious preference (id. ¶¶ 13, 15-16). ADC provides religious diets—including a kosher diet—to inmates to afford them the opportunity to comply with their religious beliefs (id. ¶¶ 17-18). Religious diets are limited to inmates who establish a sincere religious reason for the request (id.).

Administering restricted diets requires additional oversight and paperwork (id. ¶ 20). For accountability purposes, inmates on special diets must take five meals per week and must sign for each meal when they receive it (id.). To avoid waste of limited resources, policy allows inmates to be removed from the special diet if they do not comply with the policy (id.).

Inmates often find the religious diet foods more desirable than the standard fare. The preferred food offered in a religious diet can be used improperly, such as for trade and bartering, which undermines the safe and secure operation of the prison (id. ¶ 21). Manipulation of religious diets can also waste limited prison resources because they entail more preparation, manpower, and sometimes more expensive ingredients (id. ¶ 22). Therefore, ADC policies and procedures have been developed in an effort to minimize the misuse of religious designation for other than sincere religious practice (id.).

Inmates who wish to observe religious dietary laws must provide a written request for a special diet to the institutional chaplain (id. ¶ 27). Under this process, they must provide

a sincere religious reason for the request (id.). Expressing a sincere religious reason for requesting a restricted religious diet requires more than a mere recitation of scripture or religious laws; it is a reason based on what the inmate believes and a true desire to practice the declared religion (id.). Further, inmates who request a restricted religious diet are restricted from purchasing inconsistent items from the inmate store and records are kept of inmates' purchases (id. ¶ 30).

Defendant Linderman, as the Administrator of Pastoral Activities during the time relevant to Plaintiff's claim, was the individual who approved religious dietary requests (id. ¶ 28). Senior Chaplains were required to have Defendant Linderman's approval prior to granting religious dietary requests (id.). Defendant Desmond approved Plaintiff's request to change his religious preference to Messianic Judaism on November 23, 2010 (id. ¶ 46). Plaintiff's request for a kosher diet, however, was denied because Defendant Linderman advised Defendant Desmond that information available on Messianic Judaism indicates that a kosher diet is not required or even recommended (id. ¶ 47). Plaintiff was therefore asked to provide documentation from a source outside the prison to support the idea that Messianic Jews follow kosher (id.). Plaintiff then initiated the prison's grievance process to challenge the denial of his kosher diet request (id. ¶¶ 63-83). The responses to Plaintiff's grievances echoed Defendants' decision to deny Plaintiff's kosher diet request because of a lack of evidence that a kosher diet is a requirement for Messianic Judaism (id. ¶¶ 64-66, 70-71, 77-80).

**IV.   Governing Legal Standards**

    **A.   RLUIPA**

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). This "compelling government interest" and "least restrictive means" test replaced Turner's "legitimate penological interest" test. Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)). Under its own terms,

RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Warsoldier, 418 F.3d at 995 (citing 42 U.S.C. § 2000cc-3(g)).

The first step under RLUIPA requires the plaintiff to show that the exercise of his religion is at issue; this includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Next, the plaintiff bears the burden of establishing prima facie that the defendant's conduct substantially burdened his religious exercise. See 42 U.S.C. § 2000cc-1. If the plaintiff meets the prima facie burden, then the burden shifts to the defendant to prove that the substantial burden on the inmate's religious practice both furthers a compelling governmental interest and is the least restrictive means of doing so. Warsoldier, 418 F.3d at 995.

### B.     First Amendment

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see Shakur, 514 F.3d 884-85 (noting the Supreme Court's disapproval of the centrality test and finding that the sincerity test in Malik determines whether the Free Exercise Clause applies).

Once that showing is made, an inmate must establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884-85.

Finally, even if a prison regulation burdens an inmate's free exercise of religion, the regulation is valid if is reasonably related to legitimate penological interest. Turner, 482 U.S. at 89. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Shakur, 514 F.3d at 884 (quoting O'Lone, 482 U.S. at 348). To determine if a regulation is valid, courts must consider four factors: (1) whether there is a rational

connection between the regulation and the asserted government interest; (2) whether there are alternative means of exercising the right; (3) whether accommodation of the right will impact the prison or other inmates; and (4) whether there is an absence of ready alternatives. Turner, 482 U.S. at 89-90.

## V. Analysis

### A. Sincerely Held Religious Belief

The initial step in the analysis under both RLUIPA and the First Amendment requires Plaintiff to show that the religious practice at issue—consuming a kosher diet—satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief and not purely secular philosophical concerns. Malik, 16 F.3d at 333. The right to religious practice "is not limited to beliefs which are shared by all of the members of a religious sect." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 715-16 (1981). Plaintiff is therefore not required to show that consuming a kosher diet is mandated as a part of the Messianic Judaism tradition; rather, he is required to show that he sincerely believes that eating a kosher diet is consistent with his faith. Shakur, 514 F.3d at 884-85. Finally, the United States Supreme Court has stated that the question of sincerity "is, of course, a question of fact." United States v. Seeger, 380 U.S. 163, 185 (1965) (addressing sincerity of religious beliefs of individuals seeking conscientious objector status and exemption from service in the armed forces).

Plaintiff indicated to Desmond in September 2010 that his request for a kosher diet consisting of "fish, rice, beans, vegetables, and [] meats according to Leviticus II" and "no leaven bread or yeast" (Doc. 49-2 at 11[4]). In response to that inmate letter and Plaintiff's other grievances, Desmond requested "documentation that originates from outside of a prison to support the idea that Messianic Jews follow Kosher" (id. at 17). Likewise, Linderman advised Deputy Warden Pruett that the documentation Linderman found did not recommend or require a kosher diet (id. at 49, Doc. 49, Ex. F, Declaration of Misty Barrera ¶ 13).

---

[4]Additional citation refers to the specific page in the Court's Case Management/Electronic Case Filing system.

1 Plaintiff was invited to provide further documentation (id.).

2 The record confirms that Defendants repeatedly responded to Plaintiff's requests demanding "documentation" that supports the idea that Messianic Jews follow kosher dietary laws (id. at 17). Thus, Defendants maintain that Plaintiff failed to provide a "legitimate request for a kosher diet" (Doc. 48 at 17). However, reviewing Plaintiff's request and Defendants' responses under the lens of well-established Ninth Circuit case law mandates a contrary conclusion. The Ninth Circuit has explained that "'[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" Shakur, 514 F.3d at 884 (quoting Hernandez v. C.I.R., 490 U.S. 680, 699 (1989)). Instead, a court must apply a subjective or "sincerity test"—if the prisoner has a "sincerely held" belief that is consistent with his faith and "rooted in religious belief," the Free Exercise Clause is implicated. Shakur, 514 F.3d at 884-85 (internal citations omitted). The constitutional guarantee of free exercise of religion "is not limited to beliefs which are shared by all of the members of a religious sect." Thomas, 450 U.S. at 715-16.

Defendants maintain that Plaintiff routinely purchases non-kosher food items from the prison's commissary, thereby undermining his claim that his beliefs are sincerely held (Doc. 49, Ex. I, Declaration of Valerie Stearns ¶¶ 6-7). Stearns also declares that the store list inmates use to place commissary orders indicates whether items are kosher by placing a "K" next to all kosher items (id. ¶ 5).

While this evidence certainly gives rise to an inference that Plaintiff was not completely devout in his religious practice, this evidence is not dispositive for two reasons. First, Plaintiff indicates in his response that he purchased non-kosher items for others in his unit (Doc. 51 at 6). Further, even if Plaintiff did consume non-kosher items, this establishes that he is imperfect in his religious practice. But this "backsliding" or nonobservance of a religious practice is not sufficient to establish as a matter of law that Plaintiff is insincere in his religious beliefs. Curry v. Cal. Dep't. Of Corr., 2013 WL 75769, *7 (N.D. Cal. Jan. 4, 2013) (citing Lute v. Johnson, 2012 WL 913749, *7 (D.Idaho 2012)). In short, this is a

- 8 -

disputed issue of material fact that the Court cannot resolve at summary judgment. Along the same lines, Defendants point to Plaintiff's religious history and his change from Islam, to universal religion, to Christian, and, eventually, to Messianic Judaism (DSOF ¶¶ 35-38, 46). But this evidence, again, is insufficient to find as a matter of law that Plaintiff in insincere in his Messianic Judaism beliefs. Indeed, Desmond granted Plaintiff's request to change his religious preference (id.).

Defendants also attempt to characterize their request for documentation as a ministerial part of the religious diet request process, akin to filling out a form in Resnick v. Adams, 348 F.3d 763, 768-69 (9th Cir. 2003) (Doc. 48 at 20-21). But there is nothing about Defendants' solicitation of documentation that resembles the procedure in Resnick. Indeed, the multiple requests for proof that Messianic Jews must eat kosher at a minimum raises the inference that Defendants denied Plaintiff's request not because Plaintiff did not follow the correct procedure but because he did not satisfy Defendants' request for proof or verification. The Court also notes that Defendants did not cite Plaintiff's commissary purchases or religious history when denying his kosher diet request in November 2010; rather, they only focused on Plaintiff's failure to provide sufficient proof that Messianic Jews follow kosher (DSOF ¶ 47).

Defendants misapprehend the law when they argue that Plaintiff must do more than he has already done, that is, to represent that he believes that he must consume a kosher diet to conform with his religious beliefs (Doc. 51 at 5-6). As stated, it is improper for the Court to second-guess a particular individual's interpretation of his religious creeds. Shakur, 514 F.3d at 884. Further, Defendants' insistence that Plaintiff provide "verification" or "documentation" to support his request is dangerously close to, if not the same as, requiring an inmate to establish that a requested accommodation is a mandated tenant of his faith, which is not, and has not been, the law in this Circuit since the Shakur Court clearly explained that the Supreme Court disapproved the centrality test, finding it inappropriate for courts to "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Shakur, 514 F.3d at 884-885 (citing

Hernandez, 490 U.S. at 699).

In short, material questions of fact preclude summary judgment as to whether Plaintiff's beliefs are sincerely held and Defendants are not entitled to judgment as a matter of law as to this issue.

### B.  Substantial Burden

The next step in the analysis requires Plaintiff to demonstrate that Defendants substantially burden the practice of his religion by preventing him from eating a kosher diet. Shakur, 514 F.3d at 884-85. A substantial burden exists where the state "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas, 450 U.S. at 717-18. Even where the compulsion to modify behavior may be indirect, "the infringement upon free exercise is nonetheless substantial." Id. at 718.

If Plaintiff establishes that his need for a kosher diet is a sincerely held religious belief, denial of the diet is a substantial burden to his religious practice. See Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008) ("We have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise."). Defendants attempt to counter that presumption by their argument regarding Plaintiff's non-kosher commissary purchases. Consistent with the analysis above, however, Defendants' evidence is insufficient to establish the absence of a substantial burden as a matter of law. This argument is simply a recapitulation of Defendants' attack on Plaintiff's sincerity.

The Court must therefore proceed to evaluate the merits of Plaintiff's claim under both RLUIPA and the First Amendment.

### C.  RLUIPA Analysis

Before analyzing Plaintiff's claim under the RLUIPA steps outlined above, the Court first addresses whether money damages are available against Defendants in their official capacity and whether there exists individual liability (see Doc. 48 at 13-15).

#### 1. Official Capacity

The United States Supreme Court has held that money damages are unavailable for

- 10 -

RLUIPA claims against defendants sued in their official capacity.  See Sossamon v. Texas, --- U.S. ----, 131 S. Ct. 1651, 1663 (2011) (finding that states, "in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver"); see also Holley v . Cal. Dep't of Corr., 599 F.3d 1108, 1112 (9th Cir. 2010).  Therefore, to the extent that Plaintiff sues Defendants in their official capacity for RLUIPA violations, his claim will be dismissed.

**2.  Individual Capacity**

The Ninth Circuit has not ruled on whether RLUIPA allows for money damage claims against state actors in their individual capacity.  Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 n. 3 (9th Cir. 2011) ("[t]he Ninth Circuit has not ruled on this issue in a precedential opinion, and we reserve this question for another day").[5]  But in Florer, the Ninth Circuit observed that four other circuit courts have held that RLUIPA does not provide for individual-capacity claims for damages against prison officials.  See Rendelman v. Rouse, 569 F.3d 182, 188-89 (4th Cir. 2009);  Sossamon v. Lone Star State of Texas, 560 F.3d 316, 328-29 (5th Cir. 2009);  Nelson v. Miller, 570 F. 3d 868, 889 (7th Cir. 2009); and Smith v. Allen, 502 F.3d 1255, 1272 (11th Cir. 2007)).  In addition, even absent Ninth Circuit case law squarely addressing the issue, numerous district courts within this Circuit have found that RLUIPA does not provide for individual-capacity damage claims.  See, e.g., Florer v. Bales-Johnson, 752 F. Supp. 2d 1185, 1205-1206 (W.D. Wash. 2010); Parks v. Brooks., 2010 WL 5186071, at *1-2 (D. Nev. 2010); Sokolsky v. Voss, 2010 WL 2991522, at *2-4 (E.D. Cal.

---

[5]The Court notes that the Ninth Circuit has held that damages are available against a municipality sued under the land use provisions of RLUIPA. Centro Familiar Cristiano Buenas Nuevas v. City of Yuma, 651 F.3d 1163, 1168-69 (9th Cir. July 12, 2011). Those provisions, 42 U.S.C. § 2000cc, were upheld as an exercise of Congress's Fourteenth Amendment enforcement powers. Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 986, 992-93 (9th Cir. 2006).  As discussed herein, the RLUIPA provisions protecting prisoners, 42 U.S.C. § 2000cc-1, have been upheld as constitutional under the Spending Clause. Mayweathers v. Newland, 314 F.3d 1062, 1066-70 (9th Cir. 2002).

2010); Harris v. Schriro, 652 F. Supp. 2d 1024, 1030 (D. Ariz. 2009).[6]

These courts have applied a Spending Clause analysis to conclude that RLUIPA does not allow damages against defendants in their individual capacity. The Court finds no basis to depart from this weight of well-reasoned and sound authority.

Plaintiff's claim arises under Section 3 of RLUIPA, which provides that no government may impose a substantial burden on a prisoner's religious exercise, even if the burden results from a rule of general applicability, unless the government shows that the burden furthers a compelling governmental interest and is the least restrictive means of doing so. 42 U.S.C. § 2000cc-1(a). "This section applies in any case in which . . . (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b)(1)-(2). Thus, Section 3 of RLUIPA was enacted pursuant to Congress's powers under the Spending Clause and the Commerce Clause. See Cutter v. Wilkinson, 544 U.S. 709, 715-16 (2005).

In this case, there are no allegations or evidence that "the substantial burden affects . . . commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b)(2). Consequently, Plaintiff's claim against Defendants does not implicate the Commerce Clause, and RLUIPA is analyzed solely as an exercise of Congress's Spending Clause power. Smith, 502 F.3d at 1274 n. 9; Sossamon, 560 F.3d at 328-29 n. 34.

Federal statutes enacted under Congress' spending power condition receipt of federal funds on a State's adherence to certain conditions, much like a contract. Smith, 502 F.3d at 1273-75 (citing Cutter, 544 U.S. at 715-16, and Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981)). In Smith, the Eleventh Circuit explained that these federal statutes

---

[6] Other district court cases have held that RLUIPA allows for suits against individual defendant for damages. See Orafan v. Goord, CV 2022, 2003 WL 21972735, at *9 (N.D.N.Y. Aug. 11, 2003); Charles v. Verhagen, 220 F. Supp. 2d 937, 953 (W.D. Wis. 2002).

cannot subject a non-recipient of federal funds to private liability for damages. 502 F.3d at 1275. Individual RLUIPA defendants are not recipients of federal funding and are not parties to the contract in their individual capacity; only the State is. Id. It follows that only the State may be liable for a RLUIPA violation. Id.; see Sossamon, 560 F.3d at 328-39 (same). According to the Seventh Circuit, "[c]onstruing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause." Nelson, 570 F.3d at 889.

The Ninth Circuit has held that RLUIPA is constitutional under the Spending Clause. Mayweathers, 314 F.3d at 1066-70. Therefore, following the rationale set forth by the Eleventh Circuit in Smith and adopted by numerous others courts, Plaintiff cannot obtain monetary damages against Defendant in their individual capacity for an alleged RLUIPA violation. Plaintiff's RLUIPA claim for damages against Defendants in their individual capacity will be dismissed.

### 3. Injunctive Relief

In light of the above, Plaintiff's sole remaining RLUIPA claim is for injunctive relief. See Sossamon, 131 S. Ct. at 1666 (Sotomayor, J., dissenting) (noting the majority's implicit acceptance of suits for injunctive relief under RLUIPA); Guru Nanak Sikh Society of Yuba City v. Cnty. of Sutter, 326 F. Supp. 2d 1140, 1161 (E.D. Cal. 2003) (injunctive relief is "appropriate relief" under RLUIPA).

### 4. Compelling Government Interest by Least Restrictive Means

As explained previously, to analyze the merits of Plaintiff's RLUIPA claim, the Court looks to whether Defendants' actions further a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). Defendants bear the burden on this part of the analysis and, to that end, maintain that the safe, secure, orderly prison operations and the accommodation of prisoners' dietary needs in an organized fiscally-sound manner are the compelling governmental interests at stake (Doc. 48 at 21). They argue that prisoners sometimes find religious diets to be more desirable than the

standard fare and that an inmate may "convert" to a religion to obtain a perceived better meal (DSOF ¶¶ 21, 23). As a result, Defendants assert that requiring an inmate to provide a written request for a special diet that indicates a sincere religious reason for the request is the least restrictive mechanism to meet those objectives (id. ¶ 27).

There is no question that prison security is a compelling interest. Cutter, 544 U.S. at 723. But that is not the end of the inquiry; the Court must also conclude that Defendants' policy utilizes the least restrictive means to achieve its compelling interest. Warsoldier, 418 F.3d at 998. The Ninth Circuit explained that, "[I]n light of RLUIPA, no longer can prison officials justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison. RLUIPA requires more." Greene v. Solano County Jail, 513 F.3d 982, 989-90 (9th Cir. 2008). Prison officials must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." Id. at 990 (quoting Warsoldier, 418 F.3d at 999). Indeed, in Warsoldier the court specifically rejected the idea that courts must "completely defer to [prison officials'] judgment." 418 F. 3d at 1001. Defendants here do not even attempt to make their required showing that they considered and rejected alternative measures.

Because Defendants provide only conclusory statements to support their argument that their chosen procedure is the least restrictive means of ensuring that religious diets go to only those inmates who desire them for religious reasons, particularly in view of the disputed facts surrounding Plaintiff's sincerity, Defendants are not entitled to summary judgment as to Plaintiff's RLUIPA claim.

### D.    First Amendment Analysis

The Court must next examine whether the burden on Plaintiff's religious exercise is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89. Defendants submit that the prison has a legitimate interest in running a simplified food service and that by limiting diet-request changes to those inmates who seek a religious diet for sincere reasons, there are less administrative difficulties, and inmates cannot request diet changes for improper reasons, such as trading or bartering or because they find the religious meal more

- 14 -

favorable (Doc. 48 at 24). The Court agrees that limiting special religious diets to those inmates who provide a sincere religious reason serves a legitimate penological interest. Indeed, Plaintiff does not challenge this requirement. Rather, he alleges that he met the requirement but was nonetheless denied a religious diet. Thus, the Court does not analyze the religious-diet restriction on its face; it looks at whether the restriction as applied to Plaintiff relates to a legitimate penological interest.

The evidence shows that Defendants denied Plaintiff's diet request because Plaintiff did not provide evidence to establish that Messianic Jews follow kosher dietary laws (Doc. 49-2 at 13, 17, 48 ¶ 11, 49 ¶ 19). Defendant argues that this denial serves a legitimate penological interest because if Plaintiff was approved for a religious diet without having to give a sincere religious reason or establish a religious foundation for his request, it could lead to further manipulation of the religious diet program.

But Defendants' reason for denying Plaintiff's religious diet request uses the same "central tenet" test that has been disapproved by the courts. See Shakur, 514 F.3d at 884-85. As stated, Plaintiff need not show that his request for a religious diet is based on a tenet of his religion; he need only show that his request is based a sincere belief in eating kosher. See id. at 885 ("the district court impermissibly focused on whether 'consuming Halal meat is required of Muslims as a central tenet of Islam,' rather than on whether Shakur sincerely believes eating kosher meat is consistent with his faith"). The Court has already determined that there exists a material factual dispute whether Plaintiff has shown a sincerely held belief rooted in his religious faith. When considering the specific circumstances in this case, this first factor weighs in Plaintiff's favor.

The second Turner factor concerns whether Plaintiff has other means of religious expression. Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993). Defendants introduce evidence that Plaintiff may possess items of religious significance and participate in Shabbat services (DSOF ¶¶ 32-33). But relevant to this second Turner factor is "the distinction between a religious practice which is a positive expression of belief and a religious commandment which the believer may not violate at peril of his soul." Ward v. Walsh, 1. F.3d 873, 878 (9th

- 15 -

Cir. 1993) (considering an Orthodox Jewish inmate's claim that he was denied a Kosher diet). Plaintiff's claim implies that Defendants' refusal to allow him to receive a kosher diet requires him to violate his beliefs. Given the nature of Plaintiff's religious beliefs, the requested diet accommodation is more than just a positive expression of belief; thus, this factor weighs in his favor. See Henderson v. Terhune, 379 F.3d 709, 714 (9th Cir. 2004) (second Turner factor supports the plaintiff because, "[l]ike asking an Orthodox Jew to eat non-Kosher food, cutting [the plaintiff's] hair involves a strict religious prohibition about the sanctity and purity of the body, and the concern we identified in Ward is heightened").

As to the third factor—the impact of accommodating Plaintiff's request, Defendants reiterate that if Plaintiff was permitted to have a religious diet without showing a sincere religious reason, it would "seriously impact prison security and operations" trying to manage inmates' diet requests for any reason (Doc. 48 at 25). This argument is similar to that presented by the defendant in Shakur. There, it was argued that providing the plaintiff the requested religious diet could look like favoritism and it could lead to inmates requesting diets that were not required by their religion, thereby increasing costs exorbitantly. Shakur, 514 F.3d at 886. The Ninth Circuit rejected the favoritism argument, noting that this effect exists in every case that requires special accommodations for adherents of particular religious practices. Id. The appellate court also refused to accept the defendant's assertion that there would be a significant burden on prison operations absent any specific evidence or findings to support that assertion. Id. at 887. Similarly, here, Defendants present no evidence to support the speculative assertion that accommodating Plaintiff's request in this particular case would lead to numerous inmate religious-diet requests and cause administrative havoc. This factor therefore weighs in Plaintiff's favor.

Lastly, Defendants correctly note that Plaintiff has not explicitly offered any "ready alternatives" to accommodating Plaintiff's First Amendment rights at a de minimis cost to security interests and prison resources (Doc. 48 at 25-26). But, the fact that the prison already serves a kosher diet to prisoners undercuts a general claim that accommodating Plaintiff's request in these circumstances would greatly tax prison resources.

- 16 -

In sum, none of the Turner factors weigh in Defendants' favor, and the Court cannot find that in the specific circumstances, the burden on Plaintiff's religious practice was reasonably related to a legitimate penological interest.

Because there exists a material factual dispute whether Defendants' denial of Plaintiff's religious diet request violated the First Amendment, the Court proceeds to the Defendants' qualified-immunity argument.

## VI. Qualified Immunity

A defendant is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires a court to address two questions: whether the facts alleged or shown by the plaintiff establish a constitutional violation and whether the right at issue was clearly established at the time. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts have discretion in deciding which prong to address first depending on the circumstances of the case. Pearson v. Callahan, 555 U.S. 223, 242-43 (2009).

Here, the Court has already determined that disputed facts, viewed in the light most favorable to Plaintiff, create a triable issue of fact regarding whether Defendants' conduct burdened Plaintiff's religious practice and violated his rights under RLUIPA and the First Amendment. Thus, the qualified immunity analysis turns on whether Defendants can demonstrate that their alleged conduct did not violate clearly established law. Saucier, 533 U.S. at 201.

The Supreme Court established decades ago that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Thomas, 450 U.S. at 713-14. Further, for some time, but at the least since the 2008 Shakur decision, it has been clearly established that First Amendment protects a prisoner's sincere religious beliefs, not just central tenets of his faith. 514 F.3d 884-85 (citing cases). It is also clearly established that prisoners have a right to meals that meet the dietary laws of their religion. Ward, 1 F.3d at 877.

- 17 -

Defendants' argument on the second prong is based on their version of the facts—that Plaintiff failed to provide an explanation of his beliefs sufficient to warrant a religious diet and that Plaintiff purchases non-kosher items from the commissary (Doc. 48 at 29-30). Defendants maintain that given these facts, they could not have known that their actions violated Plaintiff's constitutional rights (id.). But again, the Court has found a triable issue of fact whether Plaintiff submitted a sincere religious request for a kosher diet.

Defendants' relatedly contend that even if the right at issue was clearly established, if, due to other circumstances, an officer makes a mistake as to what the law required, he is entitled to qualified immunity (id. at 28, citing Saucer, 533 U.S. at 205). Defendants argue that they simply "followed ADC's routine religious diet request procedure and afford[ed] Plaintiff] the opportunity to submit a request for a kosher diet, along with information documenting the religious reason for the request" (id.) Because Plaintiff did not supply the requisite information and purchased non-kosher items from the inmate store, a reasonable officer in Defendants' position would not have understood that his actions violated Plaintiff's constitutional rights (id. at 29).

The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009); see also Hunter v. Bryant, 502 U.S. 224, 227 (1991) (qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"). Accordingly, "reasonable mistakes" are immunized, and only gross incompetence is punished. Here, the reason for the denial of Plaintiff's kosher-diet request is clear from the record; it was due to Plaintiff's failure to provide documentation establishing that Messianic Jews eat kosher. But, as explained, over five years ago the Ninth Circuit held that prison officials may not "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Shakur, 514 F.3d at 884-885. Any argument that Defendants' actions were a mistake in view of this case law is untenable.

Moreover, qualified immunity does not bar a suit for declaratory or injunctive relief, both of which Plaintiff seeks in this action. Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 527 (9th Cir. 1989).

For these reasons, summary judgment on qualified immunity grounds will be denied.

## VII.  Available Relief

Although unclear, it appears as though Plaintiff sues Defendants in both their official and personal capacities. Defendants argue that any monetary claim against Defendants in their official capacity must be dismissed, as well as any claim for declaratory and injunctive relief against him in their individual capacity (Doc. 48 at 26).

The Supreme Court has held that state officials sued in their official capacity are not "persons" within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71 (1989). There is one exception to this rule; "[w]hen sued for prospective injunctive relief, a state official in his official capacity *is* considered a 'person' for § 1983 purposes." Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007) (emphasis in original) (citing Will, 491 U.S. at 71 n. 10); see Rounds v. Or. State Bd. of Higher Educ., 166 F.3d 1032, 1036 (9th Cir. 1999) (Ex parte Young, 209 U.S. 123 (1908), provides narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against state officers in their official capacity). Also, the Eleventh Amendment does not bar money damages suits against state officers in their individual, or personal, capacity. Hafer v. Melo, 502 U.S. 21, 25 (1991); Pena v. Gardner, 976 f.2d 469, 4772-72 (9th Cir. 1992).

Therefore, Plaintiff may sue Defendants in their official capacity for declaratory and prospective injunctive relief and in their individual capacity for money damages. Defendants' request to dismiss these claims for relief will be denied.

Finally, Defendants argue that Plaintiff's punitive damages claim should be dismissed because he fails to present evidence that Defendants acted with evil motive or callous indifference to his rights (Doc. 48 at 27). See Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 17 (1991) (punitive damages available under § 1983). As explained above, however, there

- 19 -

are genuine issues of material fact regarding Plaintiff's constitutional claims.  If a jury concludes that they acted with callous or reckless indifference to Plaintiff's religious exercise rights, it may assess punitive damages.  See Smith v. Wade, 461 U.S. 30, 48, 54, 56 (1983) ("punitive damages are awarded in the jury's discretion," and may be awarded based on recklessness or serious indifference to or disregard of the rights of others); Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).  This is particularly true in view of the Ninth Circuit's prohibition on requiring documentation or verification supporting that an inmate's religious request be consistent with their faith.  Plaintiff's claim for punitive damages will not be dismissed.  The Court will, however, dismiss Plaintiff's claim for monetary damages because they are not available in a § 1983 action.  Nancy Scott Degan and Kent Andrew Lambert, A Practical Guide to Commercial Damages in Louisiana, 44 LOY. L. REV. 257, 259 (1998).

**IT IS THEREFORE ORDERED that:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 48).

(2) The motion (Doc. 48) is **granted** as to Plaintiff's requests for damages under RLUIPA and moratory damages; the remainder of the motion is **denied**.

DATED this 20th day of August, 2013.

_____
Robert C. Broomfield
Senior United States District Judge

- 20 -